UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MANJEET SINGH,<br><br>       Plaintiff,<br><br>    v.<br><br>VEITH, *et al.*,<br><br>       Defendants. | Case No. 1:22-cv-01412-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON EXHAUSTION OF ADMINISTRATIVE REMEDIES BE DENIED<br><br>(ECF No. 89)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Plaintiff Michael Manjeet Singh is proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.[1] This case proceeds on Plaintiff's claims against: (1) Defendants Veith and Fowler for excessive force in violation of the Eighth Amendment; (2) Defendants Veith, Fowler, and Diaz for failure to protect; (3) Defendants Veith, Fowler, and Diaz for deliberate indifference to a serious medical need in violation of the Eighth Amendment; and (4) Defendants Veith, Fowler, and Diaz for state law claims of negligent failure to protect and failure to summon medical care. (ECF Nos. 37, 63).

Before the Court is Defendants Veith, Fowler, and Diaz's motion for partial summary judgment. (ECF No. 89). Defendants argue that Plaintiff failed to exhaust administrative remedies for his constitutional and state-law medical claims before filing this lawsuit against

---

[1] On November 2, 2022, Plaintiff's case was transferred to this Court from the Northern District of California. (ECF No. 19).

1

them. (ECF No. 89-3 at 1-2).

For the following reasons, the Court will recommend that Defendants' motion for partial summary judgment be denied.

## I.    PLAINTIFF'S PENDING CLAIMS

Plaintiff filed the complaint commencing this action on May 27, 2022. (ECF No. 9).[2] After completion of the screening process, this case now proceeds on Plaintiff's Eighth Amendment claim for excessive force against Defendants Veith and Fowler; Eighth Amendment claim for failure to protect against Defendants Veith, Fowler, and Diaz; Eighth Amendment claim for deliberate indifference to a serious medical need against Defendants Veith, Fowler, and Diaz; state law tort claim for negligent failure to protect against Defendants Veith, Fowler, and Diaz; and state law claim for failure to summon medical care in violation of California Government Code §§ 845.6 and 844 against Defendants Veith, Fowler, and Diaz. (ECF No. 63 at 2).

In Plaintiff's excessive force and failure to protect claims, which are not directly at issue in this motion, Plaintiff alleges that he argued with Defendants, and then Defendants Veith and Fowler assaulted him while no Defendant intervened to protect him. (ECF No. 9 at 5).

In his state law medical claim, Plaintiff alleges that, after assaulting him, Defendants left him injured on his cell floor and failed to summon medical care. In his constitutional claim for deliberate indifference to serious medical needs, Plaintiff alleges that, later that same day, Defendants interfered with his access to emergency medical treatment. (*Id.* at 10).

The Court's screening order permitted Plaintiff to proceed on his medical claims against Defendants because his "allegations sufficiently allege that Plaintiff's medical needs after the incident were serious such that a failure to treat Plaintiff's condition could result in further injury or unnecessary pain" and he "sufficiently allege[d] facts that Defendants Veith, Fowler, and Diaz were aware of the excessive risk to Plaintiff's health and safety and yet denied or

---

[2] Plaintiff filed a duplicate copy of his original complaint on August 4, 2022, which was docketed as "Amended Complaint." (ECF No. 15).

delayed medical treatment to Plaintiff." (ECF No. 28 at 12).[3] Specifically, Plaintiff alleges that Defendants escorted him back to his cell after being unable to receive his insulin shot. Defendants allegedly assaulted him in his cell and left him injured on the cell floor without summoning medical care. (ECF No. 9 at 5). Some time after, Plaintiff fell unconscious, "appearing unresponsive." (*Id.*).

Later that day, Plaintiff alleges that Defendants woke him up and placed him in a wheelchair to transport him back to the insulin nurse. (*Id.*). He told the nurse he had been assaulted by Defendants, and the medical code was activated. (*Id.*). An Emergency Response Vehicle ("ERV") was dispatched, and Defendants escorted Plaintiff outside to wait for the ERV. (*Id.*). When it arrived, Plaintiff could not physically climb into the ERV, and Defendants refused to provide alternative access to the vehicle, such as a gurney, or allow medical staff to take Plaintiff's vitals, administer first aid, oxygen, or treatment. (*Id.* at 10). Defendants returned him to his cell without any medical care. (*Id.* at 6).

## II.     DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.     Defendants' Motion and Arguments

On October 2, 2025, Defendants filed a motion for partial summary judgment, arguing Plaintiff failed to exhaust administrative remedies against them because he did not file a "grievance related to his Eighth Amendment claim that Defendants acted with deliberate indifference to his serious medical needs or his state law claim that Defendants failed to summon medical care." (ECF No. 89-3 at 1). Therefore, Defendants request an order that "this case proceed solely on Plaintiff's Eighth Amendment excessive force claim, Eighth Amendment failure to protect claim, and state law negligent failure to protect claim" against them. (*Id.* at 1-2). In the alternative, Defendants request the Court hold an evidentiary hearing

---

[3] On September 27, 2023, Plaintiff filed a notice that he wanted to proceed only on the cognizable claims described in the Screening Order. (ECF No. 34). Accordingly, on October 11, 2023, the Court issued findings and recommendations that all claims and defendants be dismissed, except for Plaintiff's claims of excessive force, failure to protect, deliberate indifference to serious medical needs, and state law failure to summon medical care. (ECF No. 37 at 2). The district judge adopted the findings and recommendations in full on November 26, 2024. (ECF No. 63).

"if the Court deems it necessary." (*Id.* at 2).

Specifically, Defendants rely on a 602 grievance form assigned Grievance Appeal Log No. 128668 and a summary of an interview of Plaintiff set forth in a memorandum from Lt. Aceves to Correctional Captain Weber dated June 11, 2021. (*Id.* at 134).[4]  Defendants claim that any issues raised in that form and interview were exhausted.  (ECF No. 89-3 at 7).

However, Defendants argue that "Plaintiff's Grievance Log No. 128668 raised and exhausted his excessive force and failure to protect claims against [Defendants]…[but] this grievance did not identify or accuse [them] of acting with deliberate indifference towards [Plaintiff's] physical injuries[;] unlike the operative complaint, there are no claims in the grievance that Diaz, Veith, or Fowler failed to summon medical treatment for him at any point or prevented him from receiving medical treatment from the ERV." (*Id.*). Thus, Defendants argue that Grievance Appeal Log No. 128668 did not put them on notice of claims against them related to Plaintiff's medical treatment. (*Id.*).[5]

**B.    Plaintiff's Opposition**

On January 14, 2026, Plaintiff filed his opposition to Defendants' motion for partial summary judgement, arguing "it is disputed that the [grievance] process provided was followed." (ECF No. 96 at 2). Plaintiff asserts that Defendants included the declaration of H. Moseley in their motion for partial summary judgment and that Moseley "granted an appeal that had to do with effective communication and reporting of the incident [at] issue in this case." (*Id.* (emphasis omitted)). He further argues:

> The defendants['] own factfinding shows that they were on notice. As part of the investigation into the events involved in this case, the plaintiff was

---

[4] It appears from Defendants' motion and supporting documents that there is a factual dispute as to whether Plaintiff attempted to file an initial grievance document regarding the incident.  Plaintiff stated that he filed a grievance "the same day (6/9/21)" but alleges that he learned the grievance was "intercepted" when "AIMS[4] Lt. Aceves took his statement on 6/11/21." (ECF No. 89-5 at 124). Nevertheless, Defendants argue that even if all issues Plaintiff later raised in a grievance appeal and related interview are considered exhausted, Plaintiff did not exhaust his medical claims against them.

[5] Defendants acknowledge that "Plaintiff's grievance history shows he filed other grievances regarding issues that arose after the June 9 incident," but they assert that those grievances "did not include any claim regarding the Defendants' alleged indifference to his medical needs. (Appeal Log Nos. 134042, 134935, 146422, 146434, 179912, 182906, and 192669)." (*Id.*).

> interviewed. A department issued Memorandum on the issues discussed in the interview included the medical code called and the misconduct in not providing treatment to the plaintiff. Why would the medical treatment accorded to plaintiff or lack thereof be a topic if the department did not have notice of these facts? This makes clear that the department did have notice of the medical issues contained in the complaint.

(*Id.* at 2-3). Plaintiff argues "that a dispute of the facts in this case exists" and requests the Court deny the motion for partial summary judgment. (*Id.* at 5).[6]

### III.    LEGAL STANDARDS

#### A.  Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).

"A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

If the moving party does so, "the burden then shifts to the non-moving party to

---

[6] Defendants did not file a reply brief.

designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387*; see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"); *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) ("A motion for summary judgment may not be defeated, however, by evidence that is merely colorable or is not significantly probative.") (citation and internal quotation marks omitted); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1103 (9th Cir. 2000) ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.").

"All reasonable inferences must be drawn in the nonmoving party's favor, but such 'inferences are limited to those upon which a reasonable jury might return a verdict.'" *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.").

### B.  Exhaustion Under the Prison Litigation Reform Act

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199–1201 (9th Cir. 2002) (*per curiam*). The exhaustion requirement applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action

whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736, 741 (2001); *Ross v. Blake*, 578 U.S. 632, 643 (2016).

> Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The grievance need not include legal terminology or legal theories, because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.

*Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016). "Thus, a prisoner's failure to list all staff members involved in an incident in his inmate grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies." *Id.* at 958; *see McClure v. Chen*, 246 F. Supp. 3d 1286, 1294 (E.D. Cal. 2017) (denying summary judgment because grievance sufficiently put officials on notice of the nature of the wrong alleged to exhaust administrative remedies); *see also Hernandez v. I.S.U.,* No. 21-CV-04368-HSG, 2025 WL 964688, at *11 (N.D. Cal. Mar. 31, 2025) (finding grievance describing officer conduct sufficient notice to prison officials to exhaust administrative remedies); *Washington v. Salinas Valley State Prison*, No. 22-CV-05831 BLF (PR), 2024 WL 2306286, at *8 (N.D. Cal. May 21, 2024) (finding grievance provided sufficient information that specific staff could be identified through investigation and therefore plaintiff exhausted administrative remedies against one officer defendant).

"[F]ailure to exhaust is an affirmative defense under the PLRA" that a defendant must plead and prove. *Jones*, 549 U.S. at 216. In *Albino,* the Ninth Circuit held that the appropriate framework for determining failure to exhaust is a motion for summary judgment. *Albino*, 747 F.3d at 1172. To succeed on a motion for summary judgment based on failure to exhaust, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* (citation omitted). If the defendants have met their burden, "the prisoner has the burden of production" and must "come forward with evidence showing that there is something in his particular case that made the existing and

generally available administrative remedies effectively unavailable to him." *Id*. "[T]he ultimate burden of proof remains with the defendant." *Id*.

If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

## IV.    UNDISPUTED FACTS[7]

The Court has reviewed the evidence submitted by the parties and finds that the following facts are undisputed:

During the events at issue in this case, Plaintiff Michael Singh (CDCR No. T-22165), was an inmate incarcerated with the California Department of Corrections and Rehabilitation (CDCR) at Kern Valley State Prison. (DSUF[8] 1).

At this time, CDCR provided an administrative grievance system, which is codified in Title 15 of the California Code of Regulations. (ECF No. 89-3 at 6).

> At the time relevant to this lawsuit, California's prison system provided for two formal levels of appeal review. Cal. Code Regs. tit. 15, §§ 3481-83, 3485 (2022). Inmates are entitled to submit a written grievance to the Office of Grievances containing one or more claims to dispute a policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare. *Id*. at § 3481(a). Inmates must submit a claim within 60 calendar days of discovering an adverse policy, decision, action, condition, or omission by the Department. *Id*. at § 3482(b). Inmates may submit a written appeal disputing the decision from the Office of Grievances to the Office of Appeals, but must do so within 60 calendar days of discovery of the decision from the Office of Grievances. *Id*., § 3482(b). The administrative process is exhausted only after the inmate complies with all relevant prison grievance procedures and receives a final determination from the Office of Grievances or Office of Appeals. *Id*., §§ 3483(l) & 3485(l). Woodford, 548 U.S. at 95-103 (in order to give prison officials a fair opportunity to resolve a complaint, an inmate must bring that complaint in a timely manner to the officials' attention). At the relevant to this case, the regulations provided that the administrative process was also deemed exhausted if the grievance if the Office of Grievances or the Office of

---

[7] Defendants filed their Separate Statement of Undisputed Facts. (ECF No. 89-4). Plaintiff responded in his opposition brief by agreeing to certain proposed undisputed facts and denying others. (ECF No. 96 at 6).

[8] "DSUF" refers to Defendant's Statement of Undisputed Facts as agreed by Plaintiff.

> Appeals identifies the grievance as a staff complaint. Cal. Code Regs. Tit. 15, §§ 3483(l) & 3485(l).

(*Id.*).

Plaintiff was aware of the CDCR administrative grievance process and had exhausted several other grievances in the past. (DSUF 3).

Between June 9, 2021 (the date of the alleged incident) and May 27, 2022 (the date the operative complaint was filed), Plaintiff filed and exhausted one grievance regarding the underlying incident against Defendants Diaz, Veith, and Fowler, Appeal Log No. 128668. (DSUF 4).

Plaintiff also participated in an interview regarding his grievance allegations on June 11, 2021.  That interview was summarized in an AIMS memorandum to Plaintiff attached to a grievance form and submitted on June 14, 2021, which stated in relevant part:

> On Friday, 6/11/2021, I conducted an interview with complainant, Inmate Bailey,[9] Michael, T22165…Singh made these allegations during the inquiry interview for Allegation Inquiry Management Section (AIMS) cases associated with California Substance Abuse Treatment Facility (CSATF)….
> ***
> Singh stated the day after he arrived to KVSP ASU-1 (6/9/2021) he was escorted to the medical clinic after breakfast for his insulin shot. Singh stated the medical computer had technical issues and was informed he would receive his insulin shot later. Singh stated he was escorted back to his cell and engaged in a verbal disagreement with second watch staff regarding his need for his wheelchair to be located inside his cell. Singh stated his cell door was opened and he was assisted off his wheelchair and escorted into his cell [by] staff. Singh stated the cell door was closed, the handcuffed port was opened, and he was ordered to cooperate with the removal of his waist chains.
>
> Singh implied he did not follow staff's orders and continued to argue with staff regarding his wheelchair. Singh stated Correctional Officer "Veth" (Veith) stated, "This isn't SATF motherfucker [sic]" and ordered his cell door open. Singh stated Veith and Fowler took him to the ground. Singh stated Veith kicked his ribs several times; Fowler slapped his face and hit his head on the ground; Diaz removed his waist chains. Singh stated Diaz

---

[9] The memorandum states the complainant's surname as "Bailey" but includes Plaintiff's first name, Michael, and Plaintiff's CDCR number. The remainder of the memorandum refers to the complainant's surname as "Singh."

did not utilize force on him. Singh stated once his waist chains were removed, all three staff exited his cell and secured it.

Singh stated Psych Tech "Dillard" was about three to four cells away and observed Veith, Fowler, and Diaz enter his cell. Singh stated he reported staff's use of force to Dillard and asked her to call a supervisor. Singh stated Dillard was apprehensive and evasive and then left the immediate area. Singh stated an inmate in cell 106 (Johnson) heard the incident.

Singh stated later on the same day, Correctional Captain "Yardley" (female; blonde hair; combed back) interviewed him regarding his lock up order. Singh stated he informed Yardley about staff's use of force, and she dismissed him. Singh stated Veith was present during the interaction with Yardley. Singh stated Yardley pointed at Veith, laughed and stated, "Oh this one here?" Singh stated Yardley informed him he would provide him with a CDCR 0602 appeal in a condescending manner and left the unit without addressing his concerns or providing him with an appeal.

Singh stated later in the evening a medical code was activated due to him being unresponsive. Singh stated he was escorted outside the building to an Emergency Response Vehicle (ERV) but was unable to transport himself onto it. Singh stated staff documented he refused medical treatment because he was unable to transport himself onto the ERV and alleged staff denied him medical attention.

Singh stated he submitted a CDCR 1824 the same evening of the alleged incident when he went out for his insulin shot. Singh stated he feared staff intercepted the 1824 in an attempt to cover up his allegation.

Singh stated on 6/10/2021, he was seen by a doctor, who ordered him to be seen by an outside hospital due to the injuries he sustained on 6/9/2021. Singh stated upon his return to KVSP, he was moved to ASU-2 without further incident.

(ECF No. 89-5 at 134-36; ECF No. 96 at 21-22).

This June 14, 2021 grievance was logged as Grievance Appeal Log No. 128668. (ECF No. 9 at 15-16; ECF No. 89-5 at 3, 124, 128-29, 132, 134-36; ECF No. 96 at 21-22).

The KVSP Office of Grievances (OOG) advised Plaintiff on August 12, 2021, that it had received Plaintiff's claim for Grievance Appeal Log No. 128668 and would conduct an inquiry or investigation. (DSUF 5). Plaintiff filed an appeal of Grievance Appeal Log No. 128668 to the CDCR Office of Appeals (OOA) on August 12, 2021. (DSUF 6). The OOA rejected Plaintiff's appeal for Log No. 128668 on August 12, 2021, because Plaintiff's claims

were still under inquiry or investigation. (DSUF 7). The OOG's decision to investigate Plaintiff's claims in Appeal Log No. 128668 exhausted Plaintiff 's administrative remedies regarding the claims raised in that grievance. (DSUF 8).

**V.      ANALYSIS**

The Court recommends denying Defendants' motion for partial summary judgment.

As an initial matter, the Court finds that Plaintiff had administrative remedies available to him following the events of June 9, 2021.

However, the Court finds that based on the evidence presented, Defendants have not met their burden of showing an absence of a genuine dispute of fact that Plaintiff failed to exhaust his administrative remedies regarding his medical claims.

As described above, Defendants have relied on Plaintiff's interview summary to argue that any grievance Plaintiff filed or attempted to file only addressed his excessive force claims against Defendants and failed to raise his medical claims.  In other words, even though there is a dispute of fact whether Plaintiff attempted to file or filed an initial grievance about the incident before filing a second grievance, Defendants claim that any such grievance would only have covered the subjects raised in the interview summary related to the grievance. Thus, for purposes of this motion, the parties agree that the Court should look to grievance form signed on June 14, 2021, which attached Plaintiff's interview summary, to determine whether Plaintiff sufficiently notified the prison about the medical claims at issue in his lawsuit.

In looking at the interview summary in Grievance Appeal Log No. 128668, Plaintiff explained that he was "escorted back to his cell" on June 9, 2021 and "engaged in a verbal disagreement with second-watch staff regarding the need for his wheelchair to be located inside his cell."  Defendants entered is cell and "Veith and Fowler took [Plaintiff] to the ground,…Veith kicked his ribs several times," "Fowler slapped his face and hit his head on the ground," "Diaz removed his waist chains," and all three left his cell.

The interview summary then stated that despite Plaintiff's need for a wheelchair and the injuries sustained to his ribs and head, Defendants did not summon medical assistance until later that same day, after Plaintiff was found "unresponsive." According to the summary,

Plaintiff alleged that he "was escorted outside the building to an Emergency Response Vehicle" and "staff denied him medical attention." The summary states that Plaintiff was seen the next day by a doctor for "injuries he sustained on 6/9/2021." (ECF No. 89-5 at 134-36; ECF No. 96 at 21-22).

Because the summary of the interview explicitly states that Plaintiff claimed "staff denied him medical attention," the Court finds that Defendants have failed to present sufficient evidence demonstrating an absence of a factual dispute regarding Plaintiff's exhaustion of his medical claims. On the contrary, Defendant presented evidence that Plaintiff filed a grievance related to the incident and specifically raised the issue of staff denying him medical attention.

As such, the Court recommends denying Defendants' motion for partial summary judgment.

In the alternative, Defendants request an evidentiary hearing. The Court acknowledges that Plaintiff has not moved for summary judgment and an evidentiary hearing may be appropriate to resolve any disputes of fact. However, the Court has evaluated the evidence presented and recommends finding that Defendants have not met their burden of showing that Plaintiff has failed to exhaust administrative remedies based on that evidence. Defendants' motion does not indicate that they can present any additional evidence at an evidentiary hearing, or that this question turns on questions of credibility. Thus, the Court also recommends denying Defendants' request for an evidentiary hearing and finding that Defendants cannot meet their burden of proof that Plaintiff failed to exhaust administrative remedies.

## VI.    CONCLUSION AND RECOMMENDATIONS

For the reasons explained above, IT IS RECOMMENDED that:

(1) Defendants' motion for partial summary judgment (ECF No. 89) be DENIED.

(2) Defendants' request for an evidentiary hearing (ECF No. 89) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to

12

Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 14, 2026**            /s/ *Erica P. Grosjean*
                                  UNITED STATES MAGISTRATE JUDGE